1  Stacey Geis, CA Bar No. 181444
   Earthjustice
2  50 California St., Suite 500
   San Francisco, CA  94111-4608
3  Phone: (415) 217-2000
   Fax: (415) 217-2040
4  sgeis@earthjustice.org

5

6  *Local Counsel for Plaintiffs Sierra Club et al.*
   *(Additional Counsel Listed on Signature Page)*

7

8              **UNITED STATES DISTRICT COURT**
      **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9

10 SIERRA CLUB; CENTER FOR                )
   BIOLOGICAL DIVERSITY;                  )
11 ENVIRONMENTAL DEFENSE FUND;            )
   NATIONAL WILDLIFE FEDERATION;          )
12 NATURAL RESOURCES DEFENSE              )
   COUNCIL; THE WILDERNESS SOCIETY;       )
13 CITIZENS FOR A HEALTHY                 )
   COMMUNITY; DINÉ CITIZENS               )
14 AGAINST RUINING OUR                    )
   ENVIRONMENT; EARTHWORKS;               )
15 ENVIRONMENTAL LAW AND POLICY           )  Case No. _____
   CENTER; FORT BERTHOLD                  )
16 PROTECTORS OF WATER AND EARTH          )
   RIGHTS; MONTANA ENVIRONMENTAL          )
17 INFORMATION CENTER; SAN JUAN           )
   CITIZENS ALLIANCE; WESTERN             )  **COMPLAINT FOR DECLARATORY**
18 ORGANIZATION OF RESOURCE               )  **AND INJUNCTIVE RELIEF**
   COUNCILS; WILDERNESS WORKSHOP;         )
19 WILDEARTH GUARDIANS; and               )  (Administrative Procedure Act,
   WYOMING OUTDOOR COUNCIL,               )  5 U.S.C. § 551, *et seq.*)
20                                        )
                                          )
21        Plaintiffs,                     )
                                          )
22        v.                              )
                                          )
23                                        )
   RYAN ZINKE, in his official capacity as )
24 Secretary of the Interior; BUREAU OF   )
   LAND MANAGEMENT; and UNITED            )
25 STATES DEPARTMENT OF THE               )
   INTERIOR,                              )
26                                        )
          Defendants.                     )
27

28

**INTRODUCTION**

1.     This case challenges the U.S. Bureau of Land Management's (BLM) decision to stay compliance deadlines for certain provisions of its Waste Prevention, Production Subject to Royalties, and Resource Conservation Rule (Waste Prevention Rule or Rule), 81 Fed. Reg. 83,008 (Nov. 18, 2016), which has been in effect since January 17, 2017.  *See* 82 Fed. Reg. 27,430 (June 15, 2017). BLM's June 15, 2017 stay violates the Administrative Procedure Act (APA).  5 U.S.C. §§ 553, 705, 706(2)(A).  The stay harms Plaintiffs (collectively, Conservation and Tribal Citizen Groups) and other members of the public by reducing royalty payments and allowing waste of public natural gas resources and excessive air pollution that would otherwise be controlled under the Rule.

2.     The Waste Prevention Rule sets standards to limit the pervasive problem of waste of natural gas by oil and gas companies operating on federal or tribal oil and gas leases.  These companies waste publicly-owned gas by deliberately venting it into the atmosphere, flaring it (burning it without capturing the energy), or otherwise allowing it to leak into the air.  BLM estimates that, between 2009 and 2015, federal and tribal lessees vented or flared enough gas to serve about 6.2 million households for a year.  By controlling this waste and requiring more gas to be brought to market, the Rule increases revenues for states and local governments that receive royalties paid on oil and gas production.  The Rule also reduces air pollution, including greenhouse gas emissions and other smog-forming and hazardous pollutants.

3.     Opponents of the Rule attempted to prevent it from being implemented by seeking a preliminary injunction in the U.S. District Court for the District of Wyoming (District of Wyoming) and lobbying Congress to repeal the Rule using the Congressional Review Act.  The court denied the preliminary injunction on January 16, 2017.  *See Wyoming v. U.S. Dep't of the Interior*, No. 2:16-CV-285-SWS, 2017 WL 161428 (D. Wyo. Jan. 16, 2017).  Thus, the Rule went into effect as scheduled on January 17, 2017.  On May 10, 2017, the Senate rejected a motion to proceed with a vote to repeal the Rule under the Congressional Review Act, effectively ending efforts to repeal the Rule under that Act.

4.     On June 15, 2017, without providing notice or an opportunity for public comment, BLM announced that, pursuant to purported authority under 5 U.S.C. § 705, it was indefinitely

staying all the provisions for which the compliance dates had not yet passed and doing so "pending judicial review."  82 Fed. Reg. at 27,430.  Days later, BLM sought to postpone that judicial review by delaying briefing of the merits of the Wyoming case for at least 90 days to allow BLM to focus on a notice and comment rulemaking to suspend all of the Rule's provisions and ultimately rescind or revise the Rule.  The District of Wyoming granted BLM's request on June 27, 2017.

5. BLM's stay of certain provisions of the Waste Prevention Rule violates the APA.  First, BLM's attempt to justify the stay based on 5 U.S.C. § 705 violates the plain meaning of that provision and is arbitrary and capricious and must be set aside pursuant to 5 U.S.C. § 706(2)(A).  For example, BLM's action (1) seeks to "postpone" the effective date of a rule that has already taken effect, (2) attempts to use legal authority authorizing agencies to postpone the effective date of a rule "pending litigation" to justify a stay to allow BLM time to administratively rescind or revise the Waste Prevention Rule, (3) fails to apply the four-part test necessary to support a stay under § 705, (4) fails to offer a rational explanation for its changed position, including its reversal from its prior position that the Rule's costs are justified, and (5) fails to consider important aspects of the problem under BLM's governing statutes, such as the reduced waste and air pollution and increased royalties that will be foregone as a result of the stay.  Second, BLM violated 5 U.S.C. § 553 by substantively revising the Rule's compliance deadlines without providing notice or an opportunity for public comment.

6. Accordingly, the Conservation and Tribal Citizen Groups respectfully seek a declaration that BLM's stay of the Waste Prevention Rule violates APA §§ 705 and 553 and is arbitrary and capricious within the meaning of § 706(2)(A).  The Conservation and Tribal Citizen Groups also seek an order vacating BLM's postponement of the Rule's compliance dates and thereby immediately reinstating those deadlines.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. § 702 (the APA).

8.      An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 705–706.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant BLM maintains offices in this district and manages public oil and gas resources in this district that are subject to the Rule.  Additionally, Plaintiffs Sierra Club and Center for Biological Diversity are nonprofit corporations in good standing incorporated in the State of California.  Plaintiff Sierra Club is headquartered in Oakland; Plaintiffs Center for Biological Diversity, Environmental Defense Fund, Natural Resources Defense Council, and The Wilderness Society also maintain offices in this district.

## INTRADISTRICT ASSIGNMENT

10.      Pursuant to Civil Local Rules 3-5(b) and 3-2(c), there is no basis for assignment of this action to any particular location or division of this Court.  However, this case is related to Case No. 3:17-cv-03804-EDL, which is currently pending in the San Francisco Division.  Case No. 3:17-cv-03804-EDL, filed by the States of California and New Mexico, also challenges BLM's stay of certain provisions of the Waste Prevention Rule, and the legal claims in that case are nearly identical to the legal claims in this case.  Pursuant to Civil Local Rule 3-12(b), Plaintiffs intend to promptly file an Administrative Motion to Consider Whether Cases Should Be Related.

## PARTIES

11.      Plaintiff SIERRA CLUB, founded in 1892, is the nation's oldest and largest grassroots environmental organization.  Sierra Club is headquartered in Oakland, California.  Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives.  In addition to helping people from all backgrounds explore nature and our outdoor heritage, Sierra Club works to promote clean energy, safeguard the health of our communities, protect wildlife, and preserve our remaining wild places through grassroots activism,

public education, lobbying, and legal action.  Sierra Club currently has more than 777,000 members nationwide, including 173,000 in California.

12.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the Center) is a nonprofit organization incorporated in the State of California that works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction.  The Center has offices throughout the country, including an office in Oakland, California.  The Center has over 58,000 members, including more than 13,000 in California, and more than 1.3 million online supporters worldwide.  The Center's members use BLM-managed public lands for recreational, scientific, educational, and other pursuits and intend to continue to do so in the future, and are particularly interested in protecting the many native, imperiled, and sensitive species and their habitats that may be affected by oil and gas leasing.

13.     Plaintiff ENVIRONMENTAL DEFENSE FUND (EDF) is a national nonprofit organization representing over 410,000 members nationwide, including over 69,000 in California.  Since 1967, EDF has linked science, economics, and law to create innovative, equitable, and cost-effective solutions to urgent environmental problems.  EDF pursues initiatives at the state and national levels designed to protect human health and the environment.  Among these initiatives, EDF has worked to reduce waste from oil and gas operations on public lands along with its associated health-harming and climate-altering air pollution.  EDF has offices throughout the country, including one in San Francisco, California.

14.     Plaintiff NATIONAL WILDLIFE FEDERATION (NWF), founded in 1936, has emerged as one of the nation's premier grassroots non-profit conservation advocacy and education organizations.  The group is America's largest conservation organization with a mission to all Americans to ensure that wildlife thrive in a rapidly-changing world.  Headquartered in Reston, Virginia, NWF has offices throughout the country, including an office in California.  NWF has more than six million members and supporters and has affiliate organizations in 51 states and territories, including California.  NWF has a strong history of protecting public lands for wildlife and outdoor recreation by its members and is known among conservation groups for its ability to combine strong science, federal and state policy development, education, litigation, and grassroots organizing.

15.     Plaintiff NATURAL RESOURCES DEFENSE COUNCIL (NRDC) is a non-profit environmental membership organization that uses law, science, and the support of more than two million members and activists throughout the United States, including 66,000 in California, to protect wildlife and wild places and to ensure a safe and healthy environment for all living things. NRDC has offices throughout the country, including an office in San Francisco, California.  NRDC has a long-established history of working to protect public lands and clean air.  In particular, NRDC has worked for decades to protect public lands, nearby communities, wildlife habitat and air quality from the threats posed by oil and gas development.

16.     Plaintiff THE WILDERNESS SOCIETY (TWS's) mission is to protect wilderness and inspire Americans to care for our wild places.  TWS has offices throughout the country, including an office in San Francisco.  TWS has more than 1,000,000 members and supporters around the West, including more than 91,000 in California.  TWS has a long-standing interest in the management of public lands across the nation, and engages frequently in land use planning and project proposals that could potentially affect wilderness quality lands, wildlife habitat, and other natural resources, as well as the health, safety and quality of life of surrounding communities.  TWS also has a long-standing interest in the use of our public and tribal lands for energy development, including supporting a transition to renewable energy, and ensuring that oil and gas and other energy development are focused in suitable locations and completed in a manner that does not harm other values.

17.     Plaintiff CITIZENS FOR A HEALTHY COMMUNITY (CHC) is a grass-roots organization with more than 500 members formed in 2009 for the purpose of protecting people and their environment from the impacts of BLM-authorized oil and gas development in the Delta County region of Colorado.  CHC's members and supporters include organic farmers, ranchers, vineyard and winery owners, sportsmen, realtors, and other concerned citizens impacted by oil and gas development.  CHC members have been actively involved in commenting on BLM's oil and gas activities.

18.     Plaintiff DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT (Diné C.A.R.E.) is an all-Navajo organization comprised of a federation of grassroots community activists

in Arizona, New Mexico and Utah who strive to educate and advocate for traditional teachings derived from Diné Fundamental Laws.  Diné C.A.R.E.'s goal is to protect all life in their ancestral homeland by empowering local and traditional people to organize, speak out, and determine the outlook of the environment through civic involvement and engagement in decision-making processes relating to tribal development, including oil and gas development on public and tribal lands in the San Juan Basin of New Mexico.

19.     Plaintiff EARTHWORKS is a nonprofit organization dedicated to protecting communities and the environment from the adverse impacts of mineral and energy development while promoting sustainable solutions.  Earthworks was created in 2005, when two organizations (the Mineral Policy Center and the Oil & Gas Accountability Project) joined forces.  Earthworks collaborates with communities and grassroots groups to reform government policies to better protect air, water, public lands and communities from threats posed by mineral development.

20.     Plaintiff ENVIRONMENTAL LAW AND POLICY CENTER (ELPC) is a Midwest based not-for-profit corporation and legal advocacy organization concerned with improving environmental quality and protecting natural resources in the Midwest and Great Plains states. ELPC works on a variety of issues throughout the Midwest and Great Plains states, including advocating for clean air, clean water, renewable energy, sustainable transportation, and protecting natural places.  ELPC's work includes efforts to minimize negative environmental impacts from oil and gas development.  ELPC has members in North Dakota whose recreational and aesthetic interests are impacted by the wasteful and polluting practices of venting and flaring natural gas from oil wells.

21.     Plaintiff FORT BERTHOLD PROTECTORS OF WATER AND EARTH RIGHTS (Fort Berthold POWER) is a grassroots, member-led community group that works to promote responsible energy development in and around Fort Berthold Indian Reservation in North Dakota. Fort Berthold POWER is committed to work toward a sustainable society with an awareness for all life.  The mission of Fort Berthold POWER is to conserve and protect the land, water, and air on which all life depends.  Fort Berthold POWER works to engage citizens in activities that protect the environment, facilitates learning for members to disseminate information on environmental issues

1   that affect all people, and expands members' ability to take effective action to address issues that

2   affect land, air, and water.

3          22.     Plaintiff MONTANA ENVIRONMENTAL INFORMATION CENTER (MEIC) is a

4   nonprofit organization founded in 1973 with approximately 5,000 members and supporters

5   throughout the United States, including in California.  MEIC is dedicated to the preservation and

6   enhancement of the natural resources and natural environment of Montana and to the gathering and

7   disseminating of information concerning the protection and preservation of the human environment

8   through education of its members and the general public concerning their rights and obligations

9   under local, state, and federal environmental protection laws and regulations.  MEIC is also

10  dedicated to assuring that federal officials comply with and fully uphold the laws of the United

11  States that are designed to protect the environment from pollution.

12         23.     Plaintiff SAN JUAN CITIZENS ALLIANCE (SJCA), founded in 1986, organizes

13  people to protect our water and air, our lands, and the character of our rural communities in the San

14  Juan Basin.  SJCA focuses on four program areas, one of which is the San Juan Basin Energy

15  Reform Campaign, which seeks to ensure proper regulation and enforcement of the oil, gas, and coal

16  industry and facilitate a transition to a renewable energy economy.  SJCA has been active in BLM

17  oil and gas issues in the San Juan Basin since the early 1990s.  SJCA has 800 members.

18         24.     Plaintiff WESTERN ORGANIZATION OF RESOURCE COUNCILS (WORC) is a

19  nonprofit organization that works to advance the vision of a democratic, sustainable, and just society

20  through community action.  WORC is committed to building sustainable environmental and

21  economic communities that balance economic growth with the health of people and stewardship of

22  their land, water, and air resources.  WORC is a network of grassroots organizations from seven

23  states that includes over 12,000 members and 39 local community group chapters.  WORC's

24  members are family farmers and ranchers, townspeople, and rural residents concerned about their

25  communities and environment.  WORC's current goals include organizing and educating

26  landowners, residents, mineral estate owners and water users about the impacts of oil and gas

27  exploration and development and ensuring that the BLM enforces all applicable laws and regulations

28  related to oil and gas leasing and development.

25.     Plaintiff WILDERNESS WORKSHOP is a nonprofit organization based in Carbondale, Colorado that is dedicated to preservation and conservation of the wilderness and natural resources of the White River National Forest and adjacent public lands.  Wilderness Workshop engages in research, education, legal advocacy and grassroots organizing to protect the ecological integrity of local landscapes and public lands.  Wilderness Workshop focuses on the monitoring and conservation of air and water quality, wildlife species and habitat, natural communities and lands of wilderness quality.  Wilderness Workshop was founded in 1967 and has approximately 800 members.

26.     Plaintiff WILDEARTH GUARDIANS (Guardians) is a non-profit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West.  Guardians has offices in Colorado, Montana, New Mexico, Arizona, Washington, and Oregon. With more than 200,000 members and supporters, Guardians works to sustain a transition from fossil fuels to clean energy in order to safeguard the West.

27.     Plaintiff WYOMING OUTDOOR COUNCIL (WOC) was founded in 1967.  It is Wyoming's oldest independent conservation organization.  WOC works to protect Wyoming's environment and quality of life for future generations.  Its goal is to develop productive and lasting solutions for managing natural resources through collaborative engagement with stakeholders and decision makers.  WOC believes responsible environmental stewardship is fundamental to safeguarding public health and Wyoming's quality of life.  WOC's 5,700 members and supporters recognize that Wyoming's landscapes, wildlife, and diverse cultural history are vital resources, and that everyone relies on the state's clean air and water.

28.     The Conservation and Tribal Citizen Groups bring this action on behalf of themselves and their adversely affected members.  For many years, the Conservation and Tribal Citizen Groups have actively advocated for strong BLM standards for the reduction of waste and associated air pollution from federal and tribal leases, and have devoted significant resources toward that effort. The Conservation and Tribal Citizen Groups and their members submitted scoping comments and comments on the proposed rule and participated in public meetings and hearings.  The Conservation and Tribal Citizen Groups have intervened to defend the Waste Prevention Rule from a lawsuit filed

by several states and industry groups.  Additionally, the Conservation and Tribal Citizen Groups'
staff and members helped to successfully oppose an attempt to persuade Congress to repeal the Rule
using the Congressional Review Act.

29.     Many Conservation and Tribal Citizen Group members live in communities that
receive income from royalties from oil and gas development on public and tribal lands that is used to
fund schools, healthcare, and infrastructure.  Other Conservation and Tribal Citizen Group members
are partial royalty owners of tribal leases.  BLM's stay will lead to reductions in these royalty
payments.

30.     Numerous Conservation and Tribal Citizen Group members live, work, and recreate
in and around, and otherwise use and enjoy lands where oil and gas development is occurring or has
been proposed on federal and tribal leases.  They also live, work, and recreate in and around lands
likely to be affected by the associated air pollution and other impacts from such development.  For
example, some members live on or near split estate lands (where the federal government owns the
minerals underlying their property) that are already subject to oil and gas development or are likely
to be developed in the future.  Other members use public lands in and around federal and tribal
leases for recreation, solitude, and scientific study.  These members will be adversely affected by
BLM's decision to stay provisions of the Waste Prevention Rule.  As a result of the stay, operators
will be permitted to pollute the air and flare more gas—which causes bright, incandescent fires at
flare stacks and excessive noise—than if the Rule remained in effect.  This harms the Conservation
and Tribal Citizen Groups' members by disrupting their daily lives, subjecting them to adverse
health risks, and reducing their enjoyment of public lands and split estate and tribal lands where they
live and recreate.

31.     Defendant RYAN ZINKE is the Secretary of the Interior.  The Conservation and
Tribal Citizen Groups sue Secretary Zinke in his official capacity.  Secretary Zinke oversees the
development of energy, including natural resource extraction, on federal and tribal leases.  The
Secretary has authority to promulgate regulations pursuant to the Mineral Leasing Act (MLA), 30
U.S.C. § 189.  The MLA is one of the principal statutes that BLM cited as its authority for the Waste
Prevention Rule.

32.     Defendant BUREAU OF LAND MANAGEMENT is an agency of the United States within the Department of the Interior.  BLM is responsible for managing publicly-owned lands and minerals, in accordance with federal law.  BLM promulgated the Waste Prevention Rule, and later unlawfully stayed certain compliance dates in the Rule.

33.     Defendant U.S. DEPARTMENT OF THE INTERIOR is an executive branch department that oversees BLM, and is thus ultimately responsible for BLM's decision to unlawfully stay the Waste Prevention Rule's compliance dates.

## FACTUAL BACKGROUND

### I.     BLM Develops the Waste Prevention Rule

34.     BLM developed the Waste Prevention Rule pursuant to its authority under the MLA, the Federal Land Policy and Management Act (FLPMA), and other statutes.  Under the MLA, BLM must ensure that when oil and gas companies are permitted to develop publicly-owned natural resources, they "use all reasonable precautions to prevent waste of oil or gas." 30 U.S.C. § 225.  The MLA also requires that leases include provisions to ensure "the exercise of reasonable diligence, skill, and care in the operation of said property," that "such rules . . . for the prevention of waste as may be prescribed by [the] Secretary shall be observed," and "the safeguarding of the public welfare." 30 U.S.C. § 187.  FLPMA provides that BLM manage the public lands "in a manner that will protect the quality of the . . . scenic . . . environmental, [and] air and atmospheric . . . values." 43 U.S.C. § 1701(a)(8).

35.     BLM has long regulated venting and flaring of natural gas produced on public lands, and determined when operators must pay the federal government royalties for wasted gas. *See* Notice To Lessees and Operators of Onshore Federal and Indian Oil and Gas Leases (NTL-4A), 44 Fed. Reg. 76,600 (Dec. 27, 1979).  But BLM's promulgation of the Waste Prevention Rule in 2016 was the first update of its standards for venting and flaring publicly-owned natural gas since it issued NTL-4A in 1979.  BLM determined that it was necessary to update NTL-4A because it did not reflect modern technologies and practices, was subject to inconsistent application, and was not particularly effective in minimizing waste and lost royalties.

36.     BLM also adopted the Rule in response to recommendations from several oversight reviews, including reviews by the Office of the Inspector General of the Department of the Interior and the Government Accountability Office.  An October 2010 report by the Government Accountability Office raised concerns about waste of public resources and the inadequacies of BLM's existing requirements, and specifically recommended that BLM update its regulations to take advantage of opportunities to capture additional recoverable natural gas using available technologies.

37.     BLM estimates that federal oil and gas lessees vented or flared more than 462 billion cubic feet of natural gas on public and tribal lands between 2009 and 2015.  This figure does not include natural gas that leaked from various pieces of drilling, storage, and processing equipment.  As a result of this waste, states, tribes, and federal taxpayers lost millions of dollars annually in royalty revenues.  These revenues otherwise would have been available to fund schools, health care, and infrastructure.

38.     Natural gas that is vented or leaked into the air also has environmental impacts because natural gas is made up of methane, non-methane volatile organic compounds, and hazardous air pollutants, like benzene.  Methane is a greenhouse gas 87 times more powerful than carbon dioxide over a 20-year period that can accelerate climate change.  Methane, along with other, non-methane volatile organic compounds, also contribute to the formation of ground level ozone (or smog), which at high concentrations causes serious negative public health effects, such as increased numbers of asthma and heart attacks.  Additionally, benzene and other toxic or carcinogenic compounds found in natural gas can cause long term negative health impacts for the people that breathe them in.

39.     In 2014 BLM commenced a rulemaking process to address wasteful venting, flaring, and leaking of natural gas on public and tribal lands.  BLM solicited extensive stakeholder feedback through public forums held in communities across the country.  BLM issued a proposed rule, incorporating this feedback, in early 2016.  The agency received more than 330,000 public comments.  BLM finalized the Waste Prevention Rule on November 18, 2016.

40.     The Rule's effective date was January 17, 2017.

41.     The Rule requires operators to capture and sell natural gas that would otherwise be vented or flared by establishing a phased-in capture target that tightens from 85% in January 2018 to 98% by 2026.  The Rule also sets specific performance standards to reduce waste from some types of equipment, like storage tanks and pneumatic controllers.  The Rule further requires operators to periodically inspect their facilities for leaks, and to promptly repair any leaks identified.

42.     Additionally, the Rule modifies BLM's royalty regulations to indicate, consistent with the MLA's statutory language, that a royalty rate of 12.5% is the floor and not the ceiling.  The Rule also clarifies when loss of gas is considered 'unavoidable,' and therefore not subject to royalty payments.

43.     Consistent with its purpose to prevent waste, the Rule includes exemptions if compliance would cause operators to abandon development of significant oil or gas resources.

44.     Operators were required to comply with some of the Rule's requirements, such as the requirement to submit unenforceable waste minimization plans with applications for permits to drill, starting on January 17, 2017.  BLM chose to phase in other Rule requirements, including the capture requirements, to ease potential burdens on operators.  For those provisions, BLM set a compliance deadline of January 17, 2018, one year after the Rule's effective date.

45.     BLM estimated that the Rule would reduce wasteful venting and methane emissions by 35%, wasteful flaring by 49%, and increase royalties by up to $14 million per year.  BLM also found that the Rule would significantly benefit local communities, public health and the environment by reducing the visual and noise impacts associated with flaring, protecting communities from smog and carcinogenic air toxic emissions, and reducing greenhouse gas emissions.

46.     BLM concluded that the Waste Prevention Rule's benefits outweighed its costs "by a significant margin" with "net benefits ranging from $46 million to $199 million per year (annualizing capital costs using a 7 percent discount rate)."  81 Fed. Reg. at 83,104.  BLM also estimated that, as a result of the Rule, operators will earn up to $157 million per year (and up to $764 million over ten years) from selling recovered natural gas and natural gas liquids.

1

**II.      Opponents of the Rule Unsuccessfully Attempt to Prevent the Rule from Taking Effect**

2          47.      Prior to the Rule's January 17, 2017 effective date, the states of North Dakota,

3    Wyoming, and Montana requested that BLM postpone the effective date of the Rule by 9 months.

4    BLM did not grant the request.

5          48.      The Western Energy Alliance (WEA), other industry groups, and the states of North

6    Dakota, Wyoming, and Montana also filed a lawsuit challenging the Waste Prevention Rule in the

7    District of Wyoming.  The industry groups and several states then moved for a preliminary

8    injunction.

9          49.      The Conservation and Tribal Citizen Groups and the States of California and New

10   Mexico intervened on BLM's behalf to defend the Rule.

11         50.      In opposing the motion for a preliminary injunction, BLM argued that "[t]he waste of

12   public resources and the associated loss of royalty revenues are ongoing harms suffered by the

13   American public and federal, state, and tribal governments that far outweigh Petitioners' speculative

14   economic harms.  Because Petitioners have failed to demonstrate a likelihood of success on the

15   merits of their claims or to overcome the public's strong interest in utilizing, rather than wasting,

16   domestic energy sources, their request for a preliminary injunction must be denied."  Fed. Resp'ts'

17   Consolidated Opp'n to Pet'rs' & Pet'r-Intervenor's Mots. for Prelim. Inj. at 2, *Wyoming v. U.S.*

18   *Dep't of the Interior*, No. 2:16-cv-285 (D. Wyo. Dec. 15, 2016).

19         51.      On January 16, 2017, following briefing and argument, the District of Wyoming

20   denied the preliminary injunction request.  No party appealed that ruling.  Thus, the Rule went into

21   effect on its effective date of January 17, 2017.

22         52.      WEA, the American Petroleum Institute (API) and other industry groups as well as

23   some states also lobbied members of Congress to repeal the Rule using the Congressional Review

24   Act (CRA).  However, a majority of Senators voted against the motion to proceed to debate on the

25   CRA resolution on May 10, 2017.  On May 11, 2017, the window for expedited consideration under

26   the CRA expired.  As a result, the Rule remained in effect until BLM issued the stay challenged in

27   this case.

28

Complaint for Declaratory and Injunctive Relief                                              14

### III.   The Trump Administration Indicates That It Will Rescind or Revise the Rule

53.     On March 28, 2017, President Trump issued Executive Order No. 13,783, directing the Secretary of the Interior to consider revising or rescinding the Waste Prevention Rule.  Exec. Order No. 13,783, Promoting Energy Independence and Economic Growth, at § 7(b)(iv), 82 Fed. Reg. 16,093, 16,093 (Mar. 28, 2017).

54.     The next day, Secretary of the Interior Ryan Zinke issued Secretarial Order No. 3349 directing the BLM Director to review the Rule and report to the Assistant Secretary of Land and Minerals Management within 21 days on whether the Rule is fully consistent with the policies set forth in Executive Order No. 13,783.  Secretary of the Interior, Order No. 3349, American Energy Independence, at § 5(c)(ii) (Mar. 29, 2017).

55.     BLM's Director completed the 21-day report.  A copy of that report has not been made public.  BLM has failed to release copies of the 21-day report in response to requests under the Freedom of Information Act.

56.     On April 4, 2017, WEA sent a written request to Secretary Zinke, asking BLM to suspend the Waste Prevention Rule during the ongoing administrative review of the Rule.  WEA acknowledged that such a suspension would require BLM to comply with the APA's notice and public comment procedures.

57.     On May 16, 2017, API also sent a letter requesting that BLM postpone the Rule's compliance dates.  API acknowledged that a postponement would require a rulemaking process.

### IV.   BLM Stays Future Compliance Dates

58.     On June 15, 2017, without notice or an opportunity for public comment, BLM issued a notice under 5 U.S.C. § 705 staying all sections of the Rule with compliance dates one year or more after the effective date of the Rule.  The stayed provisions include requirements to capture gas, reduce flaring, upgrade or replace certain equipment, and inspect for and repair leaks.  These provisions taken together would have been responsible for the majority of the waste reduction BLM anticipated from the Rule.

59.     The notice did not affect the sections of the Rule for which the compliance dates had already passed.  These include the requirement to prepare waste minimization plans prior to drilling,

provisions requiring control of waste from drilling, well completions, and liquids unloading, and certain royalty provisions.

60.    The notice concedes that the Rule was "properly promulgated." 82 Fed. Reg. at 27,431.

61.    BLM issued the stay in response to WEA's and API's claims that the Rule is too costly.  In support, BLM cites to the regulatory impact analysis that BLM had previously used to support adoption of the Rule and which demonstrates that the Rule's costs are justified.  But in the stay notice, BLM concludes a stay is necessary because of the cost of compliance as well as the uncertain future of the requirements due to pending litigation and the administration's decision to reconsider the Rule.

62.    Prior to issuing the stay, BLM did not evaluate whether (1) the Rule violates the law, (2) industry would suffer irreparable harm absent a stay, (3) the balance of equities supports a stay, or (4) a stay is in the public interest.

63.    BLM also did not consider any of the Rule's benefits that would be lost as a result of the stay.  BLM did not address financial impacts on the states and tribes that rely on royalties resulting from gas captured under the Rule.  Nor did it address the impacts of staying the Rule on public health or the environment.

64.    BLM also offered no explanation for its change from the positions it took, in the Rule's preamble and during proceedings on the preliminary injunction, that the Rule's costs were justified and that no stay was warranted.

65.    BLM announced that it was staying the January 17, 2018 compliance dates "pending judicial review."  But days after announcing the stay of the Rule under 5 U.S.C. § 705, BLM moved to postpone briefing in the challenge to the Rule in the District of Wyoming by 90 days.  On June 27, 2017, the court granted BLM's request.

66.    BLM's motion for a 90-day extension of the briefing schedule indicated that BLM plans to implement a three-step process to rescind or revise the Rule while ensuring that industry will not have to comply during BLM's administrative process.  The first step is the § 705 stay challenged here.  The second step is that BLM will conduct notice and comment rulemaking to

1   suspend all provisions (including those with compliance dates that have already passed) until June

2   17, 2019.  BLM plans to issue a proposed rule prior to the end of August 2017 and a final rule prior

3   to January 17, 2018.  The third step is that BLM will conduct a separate notice and comment

4   rulemaking to rescind or revise the rule.  Despite purporting to issue the stay under authority that

5   permits a stay pending judicial review, BLM acknowledged that its reconsideration of the Rule

6   might ultimately obviate the need for that judicial review.

7       67.     The Department of the Interior has also illegally asserted its authority to use 5 U.S.C.

8   § 705 to stay another regulation related to oil and gas royalties that was already in effect.  On

9   February 27, 2017, the Office of Onshore Natural Resource Revenue (ONRR) purported to use

10  § 705 to postpone the compliance date of its Royalty Rule, which had become effective on January

11  1, 2017.  The states of California and New Mexico have challenged ONRR's unlawful use of § 705

12  in this court.  *See Cal. ex rel. Becerra v. U.S. Dep't of the Interior*, No. 17-cv-2376-EDL (N.D. Cal.

13  Apr. 26, 2017).

14                            **FIRST CAUSE OF ACTION**

15                  (*Violation of the APA, 5 U.S.C. §§ 705, 706(2)(A)*)

16      68.     The allegations in paragraphs 1-67 are incorporated by reference.

17      69.     The APA governs the procedures and practices that agencies must follow when

18  making decisions.  Section 705 of the APA provides:

19          When an agency finds that justice so requires, *it may postpone the effective date of*
            *action taken by it, pending judicial review*. On such conditions as may be required
20          and to the extent necessary to prevent irreparable injury, the reviewing court,
            including the court to which a case may be taken on appeal from or on application for
21          certiorari or other writ to a reviewing court, may issue all necessary and appropriate
            process to postpone the effective date of an agency action or to preserve status or
22          rights pending conclusion of the review proceedings.

23  5 U.S.C. § 705 (emphasis added).

24      70.     Five months after the Rule's effective date, BLM announced it was staying the Waste

25  Prevention Rule's future compliance dates.  This contradicts the plain language of § 705, which only

26  allows agencies to "postpone the effective date" of a regulation, not to stay a rule already in effect.

27      71.     BLM purports to justify the stay based both on pending judicial review and its

28  ongoing reconsideration of the Rule.  However, BLM's statements and actions demonstrate that it

issued the stay to enable it to administratively rescind or revise the rule, not to allow for "judicial review," as required by § 705.

72.     Moreover, even if a stay of future compliance dates was permissible under § 705, BLM stayed the Waste Prevention Rule's compliance dates without applying the four-part test required by § 705 to stay a regulation's effective date, including consideration of whether: (1) the action to be stayed is likely unlawful, (2) the party seeking the stay will suffer irreparable harm, (3) the balance of equities favors a stay, and (4) the public interest supports a stay. *Sierra Club v. Jackson*, 833 F. Supp. 2d 11, 30 (D.D.C. 2012) ("[T]he standard for a stay at the agency level is the same as the standard for a stay at the judicial level: each is governed by the four-part preliminary injunction test."). The grounds BLM offered in the notice do not justify staying the Waste Prevention Rule's compliance dates under the four-factor test.

73.     Moreover, in finding that "justice so requires" a stay, BLM did not conform to bedrock administrative law principles and failed to provide a reasoned basis for its decision. For example, BLM failed to acknowledge or justify its changed position (including its prior position that the Rule is cost-justified and should go into effect). Other than the benefits that would accrue to regulated industry on account of its stay, BLM also failed to consider how its stay would affect any factors relevant to its decision to adopt the Rule under the MLA and FLPMA, including waste prevented, increased royalties, and reduced environmental harm.

74.     Accordingly, BLM's decision to stay the Waste Prevention Rule's compliance dates is arbitrary and capricious, an abuse of discretion, not in accordance with law, and in excess of Defendants' statutory authority. 5 U.S.C. § 706(2)(A).

## SECOND CAUSE OF ACTION

### (*Violation of the APA, 5 U.S.C. §§ 553, 706(2)(A)*)

75.     The allegations in paragraphs 1-67 are incorporated by reference.

76.     The APA requires agencies to engage in a public, notice-and-comment rulemaking process prior to adopting, amending, or repealing a regulation. 5 U.S.C. § 553. This process is designed to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* § 553(c).

77.     BLM's stay of the Waste Prevention Rule substantively amends the Rule by delaying its compliance dates without complying with the notice-and-comment procedures required by the APA.  5 U.S.C. § 553.

78.     BLM did not incorporate into the finding a statement of reasons that notice and comment are "impracticable, unnecessary, or contrary to the public interest" pursuant to 5 U.S.C. § 553(b)(B).  Nor did BLM provide any justification warranting the use of this extraordinary exception.

79.     Accordingly, BLM's decision to stay the Waste Prevention Rule's compliance dates is arbitrary and capricious, an abuse of discretion, not in accordance with law, and in excess of Defendants' statutory authority.  5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

1.     Issue a declaratory judgment that BLM acted arbitrarily, capriciously, contrary to law, and in excess of statutory authority and failed to follow the procedure required by the APA by staying the Waste Prevention Rule's compliance dates;

2.     Vacate BLM's unlawful stay of the Waste Prevention Rule's compliance dates and reinstate the Rule's compliance dates;

3.     Award the Conservation and Tribal Citizen Groups their costs, expenses, and reasonable attorney fees; and

4.     Provide such other relief as the Court deems just and proper.


Respectfully submitted this 10th day of July, 2017,


/s/ Stacey P. Geis
Stacey Geis, CA Bar # 181444
Earthjustice
50 California St., Suite 500,
San Francisco, CA  94111-4608
Phone: (415) 217-2000
Fax: (415) 217-2040
sgeis@earthjustice.org

Robin Cooley, CO Bar # 31168 (*pro hac vice pending*)
Joel Minor, CO Bar # 47822 (*pro hac vice pending*)
Earthjustice
633 17th Street, Suite 1600
Denver, CO 80202
Phone: (303) 623-9466
rcooley@earthjustice.org
jminor@earthjustice.org

*Attorneys for Plaintiffs Sierra Club, Fort Berthold Protectors of Water and Earth Rights, Natural Resources Defense Council, The Wilderness Society, and Western Organization of Resource Councils*

Laura King, MT Bar # 13574 (*pro hac vice pending*)
Shiloh Hernandez, MT Bar # 9970 (*pro hac vice pending*)
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
Phone: (406) 204-4852 (Ms. King)
Phone: (406) 204-4861 (Mr. Hernandez)
king@westernlaw.org
hernandez@westernlaw.org

Erik Schlenker-Goodrich, NM Bar # 17875 (*pro hac vice pending*)
Western Environmental Law Center
208 Paseo del Pueblo Sur, #602
Taos, NM 87571
Phone: (575) 613-4197
eriksg@westernlaw.org

*Attorneys for Plaintiffs Center for Biological Diversity, Citizens for a Healthy Community, Diné Citizens Against Ruining Our Environment, Earthworks, Montana Environmental Information Center, National Wildlife Federation, San Juan Citizens Alliance, WildEarth Guardians, Wilderness Workshop, and Wyoming Outdoor Council*

Darin Schroeder, KY Bar # 93282 (*pro hac vice pending*)
Ann Brewster Weeks, MA Bar # 567998 (*pro hac vice pending*)
Clean Air Task Force
18 Tremont, Suite 530
Boston, MA 02108
Phone: (617) 624-0234
dschroeder@catf.us
aweeks@catf.us

*Attorneys for Plaintiff National Wildlife Federation*

Susannah L. Weaver, DC Bar # 1023021 (*pro hac vice pending*)
Donahue & Goldberg, LLP
1111 14th Street, NW, Suite 510A
Washington, DC 20005
Phone: (202) 569-3818
susannah@donahuegoldberg.com

Peter Zalzal, CO Bar # 42164 (*pro hac vice pending*)
Rosalie Winn, CA Bar # 305616 (*pro hac vice pending*)
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO  80302
Phone:  (303) 447-7214 (Mr. Zalzal)
Phone: (303) 447-7212 (Ms. Winn)
pzalzal@edf.org
rwinn@edf.org

Tomás Carbonell, DC Bar # 989797 (*pro hac vice pending*)
Environmental Defense Fund
1875 Connecticut Avenue, 6th Floor
Washington, D.C.  20009
Phone:  (202) 572-3610
tcarbonell@edf.org

*Attorneys for Plaintiff Environmental Defense Fund*

Scott Strand, MN Bar # 0147151 (*pro hac vice pending*)
Environmental Law & Policy Center
15 South Fifth Street, Suite 500
Minneapolis, MN 55402
Phone: (312) 673-6500
Sstrand@elpc.org

Rachel Granneman, IL Bar # 6312936 (*pro hac vice pending*)
Environmental Law & Policy Center
35 E. Wacker Drive, Suite 1600
Chicago, IL 60601
Phone: (312) 673-6500
rgranneman@elpc.org

*Attorneys for Plaintiff Environmental Law & Policy Center*

Meleah Geertsma, IL Bar # 233997 (*pro hac vice pending*)
Natural Resources Defense Council
2 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Phone: (312) 651-7904

mgeertsma@nrdc.org

*Attorney for Plaintiff Natural Resources Defense Council*